IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NICOLAE STEFAN ALBU,         :
                                   :
        Plaintiff,        :
                                   :       Civil Action No.
v.                             :       1:15-CV-03120-WSD-JCF
                                   :
TBI AIRPORT MANAGEMENT,    :
                                   :
        Defendant.      :

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendant's Motion To Dismiss Plaintiff's Second Amended Complaint (Doc. 26).  For the reasons discussed below, it is **RECOMMENDED** that Defendant's motion be **GRANTED** and that Plaintiff's complaint be **DISMISSED.**

## Facts And Procedural History

On September 4, 2015, Plaintiff, who is proceeding *pro se*, filed a form employment complaint against his employer, Defendant TBI Airport Management, alleging that Defendant discriminated against him because of his race (Caucasian) and religion (Christian) by failing to promote him, requiring him to work under terms and conditions of employment that differed from similarly situated employees, harassing him, and retaliating against him in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq*.  ("Title VII"). (Doc. 1 at ¶¶ 1, 12, 13).  On December 21, 2015, Defendant filed a motion to

1

dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 4).   Defendant contended that Plaintiff's Complaint "must be dismissed because Plaintiff alleges claims outside the scope of his EEOC Charge and also fails to plead sufficient fact to support his Title VII claims."   (*Id.* at 3-4).   In response, Plaintiff filed an amended complaint.   (Doc. 8).   In that complaint Plaintiff asserted that he brings this action pursuant to Title VII, 42 U.S.C. § 1981a[1], and the Rehabilitation Act, 29 U.S.C. § 701[2], and he contended that Defendant "discriminated against him, by passing over promotion to different positions because of his race (Caucasian) and religion (Christian)" and "retaliated against him for having a complaint about such discrimination and created a hostile working environment for him."   (Doc. 8 at 1).   The "Statement of Facts" section of his Amended Complaint consisted of a 10-page narrative concerning alleged acts of discrimination and retaliation since July 14, 2014, through the filing of his EEOC charge in June 2015, and events subsequent to that filing through November 2015.   (*Id.* at 2-12).

Defendant then moved to dismiss the amended complaint.   (Doc. 12). In a Report and Recommendation entered April 22, 2016 (Doc. 21), the undersigned recommended that Defendant's motion to dismiss Plaintiff's original complaint be

---

[1] 42 U.S.C. § 1981a provides the right to recover damages, including compensatory and punitive damages, for intentional discrimination under Title VII.

[2] The Rehabilitation Act, 29 U.S.C. §§ 701 *et seq*., "prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability."   *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000).

denied as moot; that Defendant's motion to dismiss be denied in part without prejudice and Plaintiff be directed to file an amended complaint with respect to Plaintiff's discrimination and retaliation claims arising from a December 2014 failure to promote to lead position, a January 2015 written warning and one-day suspension, and a February 2015 action when Plaintiff's badge was removed and he was sent home, and his retaliation claims based on actions taken against Plaintiff for filing his June 2015 EEOC charge of discrimination; and that Defendant's motion to dismiss all of Plaintiff's remaining claims for failure to administratively exhaust them be granted.  (Doc. 21 at 19).  On July 12, 2016, District Judge William S. Duffey, Jr., adopted that Report and Recommendation in part and: denied Defendant's motion to dismiss the First Amended Complaint without prejudice as to Plaintiff's claims based on (1) the 2014 failure to promote, (2) the January 2015 written warning and suspension, and (3) retaliation after Plaintiff filed his June 2015 EEOC charge; granted Defendant's motion to dismiss as to all other claims; and directed Plaintiff to file an amended complaint "in which he repleads his remaining claims, mindful of the deficiencies described in Defendant's Motion to Dismiss and in the Magistrate Judge's R&R."  (Doc. 24 at 16-17).

Plaintiff then filed a Second Amended Complaint (Doc. 25) in which he asserts that he "brings this action pursuant to Title VII . . . and 42 U.S.C. § 1981a to remedy acts of employment discrimination and retaliation perpetrated against

him by" Defendant because of his race (Caucasian) and religion (Christian).  (Doc. 25 at ¶ 1).  Defendant moved to dismiss that complaint (Doc. 26), but Plaintiff did not file a response.

### Discussion

### I.    Plaintiff's Failure To Respond To Motion

This Court's Local Rules required Plaintiff to either oppose or respond to Defendant's motion within 17 days, including time for service of the response.  *See* LR 7.1B, NDGa.; *see also* FED. R. CIV. P. 6(d).  Plaintiff did not respond, so Defendant's motion to dismiss is therefore unopposed.  *See Simpson v. Countrywide Home Loans*, Civ. Act. No. 1:10-CV-0224-CAM-ECS, 2010 U.S. Dist. LEXIS 81389, at *9 (N.D. Ga. Apr. 26, 2010) (claims in a motion to dismiss that are not addressed by plaintiff are deemed unopposed), *adopted by* 2010 U.S. Dist. LEXIS 81384 (N.D. Ga. Aug. 11, 2010); *see also* LR 7.1B ("Failure to file a response shall indicate that there is no opposition to the motion.").

An unopposed motion to dismiss is not automatically due to be granted; "rather, the Court is still required to consider the merits of the motion." *Jackman v. Hasty*, No. 1:10–CV–2485–RWS, 2012 U.S. Dist. LEXIS 57893, at *5 (N.D. Ga. Apr. 24, 2012); *see also Davis v. Bank of America, N.A.*, No. 1:11–cv–4552–JEC–RGV, 2012 U.S. Dist. LEXIS 128290, at *6 (N.D. Ga. Sept. 10, 2012) (the moving party does not automatically prevail on an unopposed motion to

dismiss).  Accordingly, the undersigned still must determine whether dismissal is proper.

## II.   Defendant's Motion To Dismiss Amended Complaint (Doc. 12)

Defendant argues that Plaintiff's Second Amended Complaint should be dismissed because (1) Plaintiff has essentially pled the same allegations found deficient in his previous complaint and therefore failed to comply with the Court's Order; and (2) the Second Amended Complaint fails to state a claim for relief. (Doc. 26 at 3).  The undersigned agrees that Plaintiff failed to adequately replead his claims to address the deficiencies in his First Amended Complaint and that he has failed to state a Title VII claim on which relief can be granted.

### A.   Applicable Pleading Standards

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* FED. R. CIV. P. 8(a)(2). Rule 10 requires that "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b).  To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a

5

motion to dismiss." *Iqbal*, 556 U.S. at 678-79.   To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.   "Additionally, because Plaintiff [is] acting pro se, [his] 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.' " *Shields v. Bank of Am.*, No. 2:11-CV-00267-RWS, 2012 U.S. Dist. LEXIS 30183, at * 3 (N.D. Ga. Mar. 6, 2012) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).   " 'This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action.' "   *Id.* (quoting *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010)).

### B.   <u>Plaintiff's Claims</u>

#### 1.   <u>Unexhausted Title VII Claims</u>

The Court required Plaintiff to replead his Title VII claims "based on (1) the 2014 failure to promote; (2) the January 2015 written warning and suspension; and (3) retaliation after Plaintiff filed his June 2015 EEOC charge."  (Doc. 24 at 17). As the Court explained, those are the only Title VII claims that Plaintiff has arguably exhausted by including in his EEOC charge or, as with his post-charge retaliation claim, he was not required to administratively exhaust them.  (*See id.* at 8-16).  Defendant correctly points out in its motion (*see* Doc. 26 at 10-16), Plaintiff makes allegations in his Second Amended Complaint concerning pre-EEOC

6

charge acts of discrimination and/or retaliation and post-EEOC charge acts of discrimination that go beyond those claims, including: a supervisor refusing to allow him to split his lunch break in half and denying him a vacation he requested; not being invited to a leadership meeting in June 2015; being given a temporary promotion for 30 days; being transferred to a different department in September 2015; having his customs seal taken away; not being assigned to a work station with a chair; and being denied promotions in December 2015.  (*See* Doc. 25 at ¶¶ 4-5, 10-16).  Plaintiff did not administratively exhaust those claims by including them in his June 1, 2015 EEOC charge (*see* Doc. 12-1), however, nor has he shown that he filed a subsequent EEOC charge concerning any post-charge acts of discrimination.  *See, e.g.*, *Cotton v. G.S. Dev.*, 390 Fed. Appx. 875, 877 (11th Cir. 2010) (unpublished decision) ("It is clear from the face of the EEOC charge of discrimination that Cotton failed to mention his hostile work environment claim and only discussed his failure to promote and wrongful demotion and termination claims.  Because Cotton failed to raise his hostile work environment claim in his EEOC charge, he did not exhaust his remedies with the EEOC with respect to this claim."); *Ramon v. AT&T Broadband*, 195 Fed. Appx. 860, 862-64, 866 (11th Cir. 2006) (unpublished decision) (finding the plaintiff failed to exhaust her hostile work environment claim because in her EEOC charge she alleged claims of sex, national origin and disability discrimination related to a cut in pay, a denial of leave and her termination, but she included no allegations "that reasonably point[ ]

7

to the kind of pervasive and oppressive conditions that would allow [the court] to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment"); *Green v. Elixir Indus., Inc.*, 152 Fed. Appx. 838, 839-41 (11th Cir. 2005) (unpublished decision) (finding that plaintiff's racially hostile work environment claim was not exhausted because he included only facts about his racially discriminatory termination claim in his EEOC charge and failed to include any facts to support a hostile work environment claim); *Bridges v. Standard Pacific of Tampa GP, Inc.*, No. 8:06-cv-1937-T-23TGW, 2007 U.S. Dist. LEXIS 4051, at *5-6 (M.D. Fla. Jan. 19, 2007) (finding that plaintiff's retaliation and sexual harassment claims were not exhausted because her charge "focuse[d] exclusively on perceived sexual discrimination against her, on a date certain, for a particular reason, in a particular manner, from a specified source, and with a particular consequence (her termination)" and "fail[ed] (by label, by factual allegation, by temporal scope, or otherwise) to identify or even intimate the notions of retaliation or sexual harassment").

Accordingly, it is **RECOMMENDED** that, to the extent that Plaintiff has asserted Title VII discrimination and/or retaliation claims based on acts other than 1) the 2014 failure to promote, 2) the January 2015 written warning and suspension, and 3) post-charge retaliation, Defendant's motion to dismiss those claims be **GRANTED**. The undersigned now considers whether Plaintiff has stated a Title VII claim on which relief can be granted as to the remaining claims.

8

### 2.     Sufficiency of Pleading

To state a claim for race discrimination under Title VII, a plaintiff must allege, at a minimum, facts that would "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that his employer subjected him to an adverse employment action because of a protected characteristic, such as race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-2(a).  Similarly, to state a Title VII retaliation claim, a plaintiff must allege sufficient facts to plausibly show that his employer took materially adverse action against him because he had engaged in statutorily protected activity, such as filing an EEOC charge or making a complaint to his manager about a practice made unlawful by Title VII. *See* 42 U.S.C. § 2000e-3(a); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Arafat v. Sch. Bd. of Broward Cnty.*, 549 Fed. Appx. 872, 874 (11th Cir. 2013) (unpublished decision).

### a.     2014 Failure To Promote

Plaintiff alleges that "Supervisor Id-Baha Mohamed, (friend and one of the protectors of Emrani Mohammed[, one of Plaintiff's Muslim co-workers,]) blocked a proposal for plaintiff's promotion in December 2014 when there was an opening for a lead position in the department the Plaintiff used to work," and this action was "initiated against the Plaintiff because of his religion and as retaliation for his complaints about the discrimination in the company."  (Doc. 25 at ¶ 5).   These allegations are identical to those set forth in Plaintiff's First Amended Complaint

(*see* Doc. 8 at 4), which the undersigned found "wholly insufficient to state a claim for discrimination or retaliation under Title VII" because

> Plaintiff did not allege that he actually applied for the position, when he applied, who made the decision, who was actually promoted, or any facts to plausibly suggest that the hiring or promotion decision was made because of a protected characteristic such as Plaintiff's race or religion.
>
> His retaliation claim based on the November or December 2014 "failure to promote" reflects similar deficiencies.  Plaintiff did not allege that he had engaged in statutorily protected activity under Title VII such as by complaining to his managers about race or religious discrimination or by filing an EEOC charge before he was allegedly "blocked" for promotion.  Nor did he allege facts showing that that the person who made the promotion decision was aware of any statutorily protected activity or that that decision was made in order to retaliate against Plaintiff for engaging in statutorily protected activity.

(Doc. 21 at 16).  In spite of the Court's direction to replead his December 2014 failure to promote claim, "mindful of the deficiencies described in Defendant's Motion to Dismiss and in the Magistrate Judge's R&R" (Doc. 24 at 17), Plaintiff simply repeated his "conclusory allegations of discrimination or retaliation without identifying the factual support to plausibly show that Defendant took adverse employment action against him because of his race or religion or subjected him to materially adverse action in retaliation for engaging in statutorily protected activity under Title VII."  (Doc. 21 at 15).  Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Title VII discrimination and retaliation claims based on the December 2014 failure to promote be **GRANTED** and those claims be **DISMISSED**.

**b.**     **January 2015 Warning And Suspension**

Plaintiff alleges that on January 13, 2015 manager Daryl King "invented and directed an insubordination case" against Plaintiff, and "Plaintiff received the DISCIPLINARY/COUN[S]ELING ACTION, containing Coaching, Written Warning, Suspension 1 day, Final warning, all this without any other disciplinary actions or warnings received before by the Plaintiff."   (Doc. 25 at ¶ 7).   A "Disciplinary/Counseling Action" form attached to Plaintiff's original complaint shows that Plaintiff was accused of being insubordinate to a supervisor, Lisa Williams, when she asked him to "help with crowd control" in an area.   (*See* Doc. 1-1 at 3-4).   Plaintiff further alleges that a few days later an African-American coworker "refused to leave the same counter when asked to do so by another Customer service supervisor (African-American), and in his case the management team only gave him a Written warning."   (Doc. 25 at ¶ 8).   Plaintiff "believes that it is obvious that he was again discriminated against based on his race which is Caucasian and his religion which is Christian."   (*Id.*).   These allegations are identical to those in his First Amended Complaint.   (*See* Doc. 8 at 6-7).   In considering those allegations in connection with Defendant's first motion to dismiss, the undersigned found that they were insufficient to state claims for discrimination and retaliation.   (*See* Doc. 21 at 16-17).   Specifically, the undersigned found that, to the extent that Plaintiff alleges that his warning and suspension were discriminatory, he had "not alleged facts that show that those

actions resulted in a 'serious and material change in the terms, conditions, or privileges' of his employment sufficient to plausibly show that he suffered an adverse employment action under Title VII's anti-discrimination clause. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001)." (Doc. 21 at 17). The undersigned notes that in his Second Amended Complaint, Plaintiff again fails to allege facts that plausibly show that his suspension constituted a serious and material change in the terms, conditions, or privileges of his employment. *See, e.g.*, *Embry v. Callahan Eye Found. Hosp.*, 147 Fed. Appx. 819, 829 (11th Cir. 2005) (finding that a one day suspension, even without pay, "did not constitute 'a *serious and material* change in the terms, conditions, or privileges of employment' " where "the most compensation lost was $88.73"). Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Title VII discrimination claim based on the January 2015 written warning and suspension be **GRANTED**.

The undersigned also found that in Plaintiff's First Amended Complaint, Plaintiff "failed to allege facts that plausibly show that those actions were taken in retaliation for engaging in statutorily protected activity that had occurred prior to those events" because he had "not alleged—prior to his June 2015 EEOC charge— what complaints he made that constituted statutorily protected activity, when he made those complaints, or to whom he directed those complaints." (Doc. 21 at 17). In spite of the Court's direction to address those deficiencies in his Second

Amended Complaint, Plaintiff failed to do so; he simply repeated his deficient allegations from his previous complaint.  In particular, he has not alleged facts that plausibly show that he engaged in statutorily protected activity prior to the January 2015 warning and suspension.  Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Title VII retaliation claim based on the January 2015 warning and suspension be **GRANTED**.

### c.   <u>Post-EEOC Charge Retaliation</u>

The undersigned noted in the April 22, 2016 Report and Recommendation that Plaintiff had alleged that his managers took several actions against him after he filed his EEOC Charge in June 2015, but it was not clear whether Plaintiff "contends that Defendant took all of those actions in retaliation for his EEOC charge, nor does he allege facts that plausibly show that all of the managers involved in those decisions were aware of his EEOC charge or that plausibly suggest that the actions were taken because he filed the EEOC charge.  (Doc. 21 at 17; *see also* Doc. 8 at 7-11).  Again, Plaintiff was directed to replead his post-EEOC charge retaliation claim.  (Doc. 24 at 15-17).

Plaintiff alleges in his Second Amended Complaint that he filed an EEOC charge on June 1, 2015 and on June 21, 2015 he sent a "message" to HR manager Bill Murphy "with facts about the way the Muslims were covered and protected in the company after the discriminations some of them were conducting against the employees of other religions."  (Doc. 25 at ¶¶ 9-10).  He further alleges manager

13

Daryl King, who had previously invited him to leadership meetings, did not invite him to a leadership meeting on June 23rd, which Plaintiff believes was a result of the message Plaintiff had sent Murphy.  (*Id.* at ¶ 10).  To the extent that Plaintiff premises his retaliation claim on his "message" to Murphy, that claim fails because he has not administratively exhausted it by including it in an EEOC charge. Although the Court has found that Plaintiff was not required to administratively exhaust retaliation claims premised on his statutorily protected activity of filing his EEOC charge (*see* Doc. 24 at 13-14), the same is not true of his retaliation claims premised on other purported statutorily protected activity, such as his alleged internal complaint to Mr. Murphy.  *See, e.g.*, *White v. Potter*, No. 1:06-CV-1759-TWT-AJB, 2007 U.S. Dist. LEXIS 102731, at *26-27 (N.D. Ga. Mar. 19, 2007) (finding that retaliation claims had not been exhausted where they did not "refer to retaliation that arose from Plaintiff's EEO complaint," but instead were premised on the plaintiff's threat to complain to upper management about discrimination and harassment and therefore did "not grow out of the EEO charge"), *adopted by* 2007 U.S. Dist. LEXIS 31909 (N.D. Ga. Apr. 30, 2007).  Furthermore, Plaintiff has not alleged facts that plausibly show that King was aware of his "message" to Murphy or that King declined to invite Plaintiff to the leadership meeting because of it. Plaintiff's speculation on that point is insufficient.  Plaintiff also failed to allege facts that King was aware of his EEOC charge or that King decided not to invite Plaintiff because he filed an EEOC charge.

14

Plaintiff further alleges that after he "wrote an update to EEOC on July 20th 2015," he was re-invited to leadership meetings and promoted on August 12th to "Acting Lead" for the International Services department.  (Doc. 25 at ¶ 11). Plaintiff alleges that King discriminated against him "by inventing 'a 30 days period' acting lead position" and that a Muslim employee had been promoted to a supervisor position "after a few weeks of being an acting lead," but Plaintiff "was moved back to the Interpreter position."   (*Id.*).  But Plaintiff has not alleged that King, the apparent decisionmaker, was aware of Plaintiff's statutorily protected activity, including his June 2015 EEOC complaint, his June 2015 "message" to Bill Murphy, or his July 20, 2015 "update" to the EEOC, when he promoted Plaintiff to an acting lead position that was only temporary and then moved him back to his Interpreter position.

Plaintiff also alleges that on September 17, 2015, Daryl King asked him to resign, "implied that certain coworkers could not work with the Plaintiff anymore," and then transferred Plaintiff to the "CS department."  (Doc. 25 at ¶¶ 12, 13). Plaintiff alleges no facts that plausibly suggest that King took those actions in retaliation for his EEOC activity, however.  Plaintiff does allege that during his September 17th meeting with King, "King referred to the content of the email the Plaintiff sent to the company [a] few days before (asking the HR department to investigate the Plaintiff's 'acting lead' situation)."  (*Id.* at ¶ 12).  But Plaintiff did not allege that he complained to HR that the "acting lead situation" was

15

discriminatory based on his race and/or religion; he simply alleges that he asked HR to "investigate" the "situation." That allegation is insufficient to show that his email to HR constituted statutorily protected activity under Title VII. *See, e.g.*, *Bailey v. Huntsville*, 517 Fed. Appx. 857, 861 (11th Cir. 2013) (unpublished decision) ("The filing of a grievance can constitute statutorily-protected activity, but only if the grievance alleges discrimination based upon a statutorily-protected ground."). Moreover, as explained above, even if his email to HR was statutorily protected activity, Plaintiff failed to administratively exhaust his remedies by including that claim in an EEOC charge. *See, e.g.*, *White*, 2007 U.S. Dist. LEXIS 102731, at *26-27.

Plaintiff also alleges that after he was transferred, his "black seal was taken away so that he no longer had the possibility to work in the customs . . . as a retaliation to the Plaintiff's complaints about the discrimination in the company." (Doc. 25 at ¶ 15). Plaintiff did not state when that action was taken or who took his seal, nor did he allege facts that plausibly suggest that the person took his seal to retaliate against him for filing his EEOC charge. Plaintiff therefore has not stated a retaliation claim based on Defendant taking his customs seal.

Finally, Plaintiff complains about other actions that occurred after he filed his June 2015 EEOC charge, including not being assigned to a work area with a chair after he was transferred to the CS department in late 2015 (Doc. 25 at ¶ 16), and not being promoted in December 2015 (*id.* at ¶ 4). Plaintiff has not alleged

facts that plausibly suggest that those actions were taken in retaliation for his EEOC activity.  In particular, Plaintiff has not alleged that the managers or supervisors who made those decisions were aware that Plaintiff had filed an EEOC charge.  (*See id.* at ¶¶ 4, 16).  Plaintiff does allege that one day a supervisor took him off the schedule to work in the position with the chair, "in retaliation again for the Plaintiff's complaints about discrimination" (*id.* at ¶ 16), but he did not allege that that supervisor was aware of his complaints.  His conclusory allegation that it was done to retaliate against him is insufficient to support that claim.

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss Plaintiff's Title VII retaliation claims based on post-EEOC charge actions be **GRANTED** and those claims be **DISMISSED**.

## Conclusion

It is **RECOMMENDED** that Motion To Dismiss Plaintiff's Second Amended Complaint (Doc. 26) be **GRANTED** and this action be **DISMISSED**. The Clerk is directed to terminate the reference of this case to the undersigned Magistrate Judge.

**IT IS SO REPORTED AND RECOMMENDED** this 26th day of September, 2016.

 /s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge